# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

NAKYA TAYLOR,

     Plaintiff,                                 Case No.

v.                                            Hon. Chief Judge Hala Jarbou

WYOMING PUBLIC
SCHOOL DISTRICT;
MICHIGAN EDUCATION
ASSOCIATION; JOSHUA
BAUCHBAUM, Individually
and in his Official Capacity;
CRAIG HOEKSTRA, Individually
and in his Official Capacity;
SARAH EARNEST, Individually
and in her Official Capacity;
     Defendants.

---

John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
Attorney for the Plaintiff
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

(1)

**PLAINTIFF'S COMPLAINT AND REQUEST FOR DAMAGES**

Plaintiff, NAKYA TAYLOR, through counsel, brings this action for constitutional and federal law violations, namely: Thirteenth Amendment's involuntary servitude ban, Fourteenth Amendment's due process and equal protection clauses, Titles VI and VII of the 1964 Civil Rights Act, and the Americans with Disabilities Act of 1990, substantiating involuntary servitude, unjust enrichment, race and disability based discrimination, disparate treatment, gross negligence, exposure to hostile work environment, and intentional infliction of emotional distress.  The Plaintiff alleges as follows:

(2)

## INTRODUCTION

This is a Civil Action asserting claims under constitutional and federal law, alleging violations of the federal Constitution; U.S. Const. amend. I, U.S. Const. amend. XIII, U.S. Const. amend. XIV, Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3, Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq, 42 U.S.C. § 1981, 42 U.S.C. § 1983, 42 U.S.C. § 1985, 42 U.S.C. § 1986, 42 U.S.C. § 12112(a), 29 U.S.C. § 207, 29 U.S.C. § 215, 29 C.F.R. § 778.107, MI CONST Art. 1, § 17, Mich. Comp. Laws § 15.362, and Mich. Comp. Laws § 37.2202, substantiating and equating unjust enrichment,

involuntary servitude, conspiracy against civil rights, unlawful employment practices, violations of the Fair Labor Standards Act, disparate treatment, gross negligence, defamation, and intentional infliction of emotional distress.  Plaintiff requests a jury trial and seeks an award of compensatory and exemplary damages, as well as reasonable attorney fees and cost pursuant to the federal Constitution, 29 U.S.C. § 216,  42 U.S.C. § 2000e-2, 42 U.S.C. § 2000e-3, 42 U.S.C. § 12117, and 42 U.S.C. § 1983.

(3)

## JURISDICTION AND VENUE

This court has jurisdiction over all causes of action set forth in this complaint pursuant to 28 U.S.C. § 1331, as the plaintiff and the Defendants reside in the County of Kent, in the State of Michigan.  The occurrence of the significant and relevant incidents giving rise to this federal question complaint took place in Wyoming, MI, County of Kent, within the jurisdiction of this Court.

(4)

## THE PARTIES

The Plaintiff is a citizen of the State of Michigan and resides in the City of Grand Rapids, County of Kent.

(5)

The Defendants are citizens of the State of Michigan with the competency and capacity to sue and be sued.  At the time of the alleged violations, the Defendants were employed and operating in Wyoming, MI (Kent County).  The Defendant is a public state entity organized under the laws of Michigan and at all times spoken to in this complaint, Wyoming Public School District and the Michigan Education Association maintained departmental offices and or principal places of business in the County of Kent, Michigan.

## FACTS GIVING RISE TO PLAINTIFF'S COMPLAINT

(6)

Prior to beginning her employment with Defendant Wyoming Public Schools, Plaintiff Nakya Taylor suffered an egregious car accident that left her disabled and suffering from several health complications and ailments.  Nakya Taylor suffers from post-concussion syndrome and undergoes regular auto-immune infusions. Symptoms from her syndrome disability include chronic migraines, fatigue, vision

changes, confusion, dizziness, and difficulty concentrating.  The Plaintiff was diagnosed with permanent symptoms prior to her employment with the Defendant and was knowingly hired by Wyoming Public High School as a disabled person.

(7)

The Plaintiff began working as a "para-media assistant" in 2015.  Despite her disability, Nakya Taylor flourished in her role and did not have any significant problems working with her employer until 2021.  For six years, the Plaintiff reports building and maintaining a strong rapport and close relationships with students, parents, and other education staff members.  Ms. Taylor states that she went above and beyond her job duties, often taking on random tasks from administrators and also supporting students with necessities through her business and community service work.  In addition to competently carrying out her official work duties and her accommodating nature in the workspace, Ms. Taylor worked with Wyoming High School counselors to ensure underprivileged students possessed necessary materials like shoes, clothes, and household items.  For several years, the Plaintiff was an integral part of the Wyoming Public High School staff and school district family.

(8)

In the Spring of 2021, Nakya Taylor's niece, Breonna Taylor, was shot and killed

by police officers in Louisville, KY.   The incident, along with the murder of

George Floyd, incited protests across the country, including the Metro Grand

Rapids area, where several members of the Taylor family still reside.  Officers in

both the Floyd and Taylor killings have been indicted and convicted since.  In the

midst of national and local protests, it was revealed to the Defendants that the

Plaintiff was Breona Taylor's aunt.  The Plaintiff requested time off to attend her

funeral memorial and was also active in the local protests seeking justice for slain

and abused African Americans across the country.


(9)

After the death of her niece, attending her funeral, and leading protests on her

behalf, the Plaintiff began experiencing negative and detrimental treatment from

her employers, namely principal Joshua Bauchbaum.  The Plaintiff asserts that the

Defendant began placing her in classrooms as a substitute teacher, with the

responsibilities of managing a high school classroom alone without providing

accommodations for her disabilities.   Nakya Taylor was promised by Joshua

Bauchbaum that she would be paid time and a half for every hour she spent

substitute teaching and would be given any special assistance or attention that she required to fulfill the role. When the Plaintiff resisted, the Principal asserted that she needed to be a "team player", and suggested to other staff members that she was not a reliable employee. Not wanting to let the staff down, and being promised that the school would address the accommodations issues, the Plaintiff accepted and substituted for certified teachers for over thirty hours without any pay. Simultaneously, the Plaintiff was still suffering from chronic headaches and a bad kidney. When the Plaintiff requested time off for a doctor's visit, Defendant Bauchbaum told her "you're lucky I let you attend that memorial", referencing her niece's funeral, as if she had no bereavement rights, paid time off, or any other plausible means to attend a funeral and retain her job beyond his personal grace. Plaintiff interpreted the Defendant's statement as a racist and coercive one intended to intimidate.

(10)

In September of 2021, the Plaintiff and other staff members noticed Joshua Bauchbaum following her around the school and had placed her under surveillance. Other caucasian employees like Sheryl Small were not followed around nor unreasonably surveilled. The Plaintiff feels that she was singled out because she

emerged as a vocal Black American activist for her niece during the Floyd/Taylor protests of 2021.  After working six years for the Defendant with post-concussion syndrome and immune system deficiencies, in October of 2021, the Defendant began refusing to accept the Plaintiff's doctors notes and started complaining about her time off for headaches and doctors appointments.  Other Black American staff members reported being followed as well and the Plaintiff asserts that Wyoming Public Schools have developed a hostile work environment against Black and Latino Americans.  The Plaintiff asserts that the Wyoming Public Schools have established a custom of racial animus by mistreating several minority employees, wrongfully terminating them, and boldly compensating others with the conspiratorial motive of preventing them from speaking out about racial animus.

(11)

The Plaintiff asserts that when the new school year began in September 2021, that Joshua Bauchbaum began disparaging her reputation by asserting to other staff members that the Plaintiff is lazy, unreliable, and ultimately stated that the Defendant told several staff members that "he didn't know how long she's going to be with the district", publicizing his conspiratorial motive to terminate her under false pretenses of not being reliable, despite being aware of her disabilities and

requests for accommodations.  When speaking with Defendant Bauchbaum about her need for accommodations to address her disabilities, he stated that she should "just get on government assistance", instead of attempting to work while disabled. The Plaintiff understood the Defendant's statement as a racist trope insinuating that African Americans  over rely on government assistance, are lazy, and that disabled people are not effective in the workplace.

(12)

In addition to the unwarranted harassment of workplace surveillance and defamation of character, the Defendant broke his promise of ensuring that the Plaintiff would be paid time and a half for the hours she spent substituting for certified teachers.  Despite several requests for accommodations and assistance from human resources, the Plaintiff was never paid for the hours of substitute teaching she performed for Joshua Bauchbaum and the Wyoming Public School District.  Nakya Taylor spoke with payroll and was told that Sarah Earnest had noted that the Plaintiff was not to be paid the difference that she was owed.  The Plaintiff felt that this notation was published for other employees to see and further worked to damage her reputation and demean her integrity as an employee.  In spite of the notation by the assistant superintendent, the Plaintiff continued to

request her contracted pay to no avail, and ultimately filed a complaint with the Michigan Department of Civil Rights.  The Plaintiff requested assistance from the Kent County chapter of the Michigan Educators Association, speaking with Eva Pritchard of the MEA/NEA, but was denied assistance by the Union despite being a covered member under their agreement with Wyoming Public Schools.  The Plaintiff and Wyoming Public Schools entered into settlement discussions, drafting an agreement, but negotiations broke down when Wyoming Public Schools Superintendent only offered the Plaintiff five hundred dollars, significantly less than the money she earned.  The Plaintiff interprets the Defendant's offer of less than she earned and their refusal to honor their contract, as a vehemently bold and racists statement that is indicative of the school district administrations' racial animus towards African Americans and minorities.

(13)

Lastly, the Plaintiff suffered a retaliatory discharge and wrongful termination, as she was dismissed as a result of demanding the enforcement of her "WESSA Agreement" contract and federal rights.  Ms. Taylor requested her work file, which contained performance evaluations, but was denied those requests.  The Plaintiff also requested an exit interview, but was denied that benefit as well.  The Plaintiff

interpreted the refusals as indicative of the Plaintiffs hardened attachment to its custom of racial animus and its inability to self-correct without litigation.   The Plaintiff simply desired and demanded the time and a half contracted for in the WESSA Union Agreement and personally promised to her by the school administrators.   After the dismissal and outright refusal to honor her human and federal rights to compensation for her labor, the Plaintiff has suffered from severe anxiety, depression, insomnia, hair loss, loss of income, residential displacement, loss of reputation, and mental anguish.

(14)

**SPECIFIC ALLEGATIONS AGAINST ALL DEFENDANTS**

Defendant Wyoming Public School District acted out a conspiracy to violate civil rights when several of its agents, namely superintendent Craig Hoekstra, assistant superintendent Sarah Earnest, and principal Joshua Bauchbaum took concerted actions to coerce the Plaintiff to work without compensation and refused to honor her employment contract rights.   Defendant WPSD discriminated against the Plaintiff when they denied her accommodations to assist with the job duties thrusts upon her, refused to pay her pursuant to the union agreement for those duties, and dismissed her after she demanded fair treatment and equal pay.  Defendant WPSD

established a hostile work environment when school administrators surveilled Black American employees without just cause while leaving Caucasian employees alone.  The Defendant further created a hostile work environment by stating to the Plaintiff that she was "lucky" he allowed her to attend a family member's funeral, that she should "get on government assistance", and asserting to other staff members that she would soon be fired for poor performance, in spite of her strong performance and lack of disciplinary proceedings.  The Defendant violated the Fair Labor Standards Act by causing the Plaintiff to work more than forty hours without overtime pay.   Furthermore the Plaintiff violated the 13th Amendment of the federal Constitution and failed to enforce contracts when they coerced the Plaintiff into involuntary servitude via false pretenses and fraud.   The Defendant was unjustly enriched by having its classrooms covered and teacher plans executed for free and without compensating the Plaintiff at all for her services.  In conjunction with the aforementioned facts, the Defendant additionally committed unlawful employment practices, racial discrimination, disability-based discrimination, and defamation when they published derogatory statements and content about the Plaintiff within the school by stating to staff members that she was lazy, unreliable, and notating on payroll documents to deny her the agreed pay-rate in spite of her

demands.   The total circumstances of the above mentioned facts equate the intentional infliction of emotional distress.

(15)

Michigan Education Association failed to enforce its WESSA agreement with Defendant WPSD on behalf of its member, Plaintiff Nakya Taylor, who had been a covered member for several years, pursuant to the WESSA agreement.  Defendant MEA collaborated with WPDS Defendants to violate the Plaintiff's civil rights to equal protection under the law and contract enforcement when they refused to assist and advocate on her behalf in the Michigan Civil Rights Department negotiations that ultimately failed and instigated this litigation.  MEA's failure to assist the Plaintiff was a violation of her rights under the WESSA agreement, in addition to a collaborative act in the common goal of denying her equal pay under the Union agreement.   The Plaintiff requested the MEA Union's assistance pursuant to the Union agreement with her employer, but was denied that assistance by Eva Pritchard, a MEA/NEA agent, and as a result, the Plaintiff is now filing this complaint.

(16)

Defendant Joshua Bauchbaum acted out defamation when he spoke negatively about the Plaintiff's work habits and performance to several staff members and collaborated with the assistant superintendent to ensure that the Plaintiff would not be paid for her substitute teaching work, causing the publishing of her payment denial to appear on staff paperwork, thereby causing mental anguish and deterioration of the Plaintiffs work reputation.  Defendant Bauchbaum intentionally inflicted emotional distress upon the Plaintiff when he made racist trope based comments to the Plaintiff about allowing her to attend a funeral and suggesting she live off government assistance instead of trying to work with her disability, while refusing to pay her pursuant to the Union agreement in spite of several promises to do so.    Mr. Bauchbaum coerced the Plaintiff into involuntary solitude under fraudulent false pretenses, by stating that he would ensure her full payment for substitute teaching while actually intending to deny the Plaintiff just compensation under the Union agreement.  Mr. Bauchbaum collaborated with the superintendent Hoekstra, assistant superintendent Earnest, and the MEA Union to ensure that the Plaintiff's demands for enforcement of the contract were quashed and that she would never be paid for the over thirty hours of substitute teaching she performed in addition to her scheduled hours.  The actions taken by Mr. Bauchbaum against this Black American Plaintiff are categorically and disparately different from the

treatment of Caucasian American staff members at Wyoming Public High School, yet eerily similar to other mistreated and terminated Black American WPDS employees.

(17)

Defendant Craig Hoekstra, as superintendent, intentionally and successfully denied the Plaintiff her right to just compensation for her labor services, and purposefully insulted her by offering her less than what she worked for at fair market value, making his racial animus towards her apparent attempting to pay her as "three-fifths" of a human being.  The Defendant failed to enforce the Plaintiffs employee rights to accommodations and mediation under the ADA and WESSA agreement. Defendant Hoekstra established a custom of racial animus via his oversight of several abused and mistreated minority employees and habitually failing to pay minority employees for their substitute teaching services in the Wyoming Public School District.

(18)

Defendant Sarah Earnest published derogatory content about the Plaintiff by noting on staff paperwork that the Plaintiff was not to be compensated fully for

her labor despite her requests. Sarah Earnest collaborated with Defendants MEA, Bauchbaum, and Hoekstra to ensure that the Plaintiff was denied her rights under the WESSA Union Agreement. Sarah Earnest assisted with the establishment of a custom of racial animus via her mismanagement of several abused and mistreated minority employees within the Wyoming Public School District.

(19)

## COUNT I. AMERICANS DISABILITY ACT VIOLATION: *WPSD Defendants & MEA*

Plaintiff, realleges paragraphs 1-19.

(20)

The Defendants violated the Americans Disability Act when they refused to make accommodations for her disabilities and refused to compensate her at the same pay rate as non-disabled employees.

(21)

"No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or

discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).  As used in subsection (a), the term "discriminate against a qualified individual on the basis of disability" includes- (1) limiting, segregating, or classifying a job applicant or employee in a way that adversely affects the opportunities or status of such applicant or employee because of the disability of such applicant or employee;(2) participating in a contractual or other arrangement or relationship that has the effect of subjecting a covered entity's qualified applicant or employee with a disability to the discrimination prohibited by this subchapter (such relationship includes a relationship with an employment or referral agency, labor union, an organization providing fringe benefits to an employee of the covered entity, or an organization providing training and apprenticeship programs);(3) utilizing standards, criteria, or methods of administration-(A) that have the effect of discrimination on the basis of disability; or(B) that perpetuate the discrimination of others who are subject to common administrative control.  42 U.S.C. § 12112 (b).

(22)

"The ADA prohibits employment discrimination based on an employee's disability. Specifically, the ADA mandates that: "No covered entity shall discriminate against

an individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The term "discriminate" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or an employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity," and "denying employment opportunities to a[n] . . . employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(A)-(B)." *Austin v. Fuel Sys., LLC*, 379 F. Supp. 2d 884, 904-05 (W.D. Mich. 2004).

(23)

"To establish a prima facie case of ADA discrimination, Plaintiff must show three things: 1) he is disabled; 2) he is otherwise qualified to perform the essential functions of his position, with or without accommodation; and 3) he suffered an

adverse employment action because of his disability." *English v. II Enters.*, No. 19-12463, at *8 (E.D. Mich. Jan. 2, 2020).

(24)

The Defendants violated the Americans Disability Act when they refused to make accommodations for her disabilities after coercing her into substitute teaching, refusing to compensate her at the same pay rate as non-disabled employees, and dismissing her without union representation.

(25)

## COUNT II. VIOLATION OF 13th AMENDMENT INVOLUNTARY SERVITUDE: *WPSD Defendants*

(26)

Plaintiffs reassert paragraphs 1-26.

(27)

The Defendants violated the thirteenth Amendment of the Constitution when they coerced the Plaintiff into laboring without pay and refused to compensate her fair market value for the substitute teaching services she provided them.

(28)

"Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII.

(29)

"The amendment and the legislation were intended to eradicate not merely the formal system of slavery that existed in the southern states prior to the Civil War, but all forms of compulsory, involuntary service. " *United States v. Lewis*, 644 F. Supp. 1391, 1400 (W.D. Mich. 1986).  "As recent Federal Circuit Court cases point out, the contours of slavery have shifted since the enactment of the Thirteenth Amendment…The 13th Amendment and its enforcing statutes are designed to apply to a variety of circumstances and conditions. Neither is limited to the classic form of slavery. Both apply to contemporary as well as to historic forms of involuntary servitude…The essence of a holding to involuntary servitude is an exercise of control by one person over another so that the latter is coerced into laboring for the former." *United States v. Lewis*, 644 F. Supp. 1391, 1401 (W.D. Mich. 1986).

(30)

The Defendants coerced the Plaintiff into involuntary servitude by suggesting to her and other staff members that she was a unreliable employee and repeatedly promising her standard pay to pressure her to cover for certified teachers while intending to collaborate to deny her the equal pay she was promised and owed.

(31)

**COUNT III. CONSPIRACY TO VIOLATE CIVIL RIGHTS – (U.S. CONST. AMEND. XIII; U.S. CONST. AMEND. XIV; 42 § U.S.C. SEC.1983):** *ALL DEFENDANTS*

Plaintiff realleges paragraphs 1-31.

(32)

The Defendants perpetrated a civil conspiracy to violate the civil rights of these Plaintiffs to due process and equal protection under the laws of this nation when they took concerted efforts to avoid their non-discretionary duties by refusing to pay the Plaintiff her labor wages.

(33)

A civil conspiracy under Section 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).   The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Maxwell v. Bailey*, 1:23-cv-439, at *18 (W.D. Mich. May 23, 2023).

(34)

The Defendants possessed a single plan to ensure that the Plaintiff was not compensated for substitute teaching services and took the concerted efforts of directing payroll staff to deny payouts despite their foreknowledge of the validity of the Plaintiff's requests and denying her union representation with the intention of negating her pursuit to enforce her rights under law.

(35)

**COUNT IV. FAILURE TO ENFORCE CONTRACTS: 42 U.S.C. § 1981**:

***Defendants WPSD and MEA***

Plaintiffs reassert paragraphs 1-35.

(36)

The Defendants failed to enforce their union agreement on behalf of the Plaintiff when they denied her union advocacy and collaborated to deny her federal rights to equal and contracted pay.

(37)

"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981.

(38)

"Make and enforce contracts" defined: For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship. (c) Protection against impairment: The

rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981.

(39)

"Section 1981 guarantees persons the equal benefit of all laws for the security of person and property as is enjoyed by white citizens, including the right to "make and enforce contracts." 42 U.S.C. § 1981(a). Under the 1991 amendments to the Act, the term "make and enforce contracts" includes the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship. 42 U.S.C. § 1981(b)." *Brewer v. Fortis Benefit Insurance Co.*, No. 4:01 cv 34, at *1 (W.D. Mich. Oct. 26, 2001). "A plaintiff must identify a particular contract which they sought to enter but were prevented from doing so for racially-motivated reasons. *Id.* at 1250 (quoting *Runyon,* 427 U.S. at 172); *Christian,* 252 F.3d at 872 (holding that plaintiff must show that he/she "sought to make or enforce a contract for services ordinarily provided by the defendant."); *Youngblood v. Hy-Vee Food Stores, Inc.,* 266 F.3d 851, 855 (8th Cir. 2001) ("The requirement remains that a plaintiff must point to some contractual relationship in order to bring a claim under Section 1981."); *Lewis v. J.C. Penney Co., Inc.,* 948 F. Supp. 367 (D. Del. 1996)

(holding that, in order to establish a contract claim under § 1981, "plaintiff must point to some contractual relationship with [defendant] in order to bring her claim."))."   *Horne v. J.C. Penney Corporation, Inc.*, File No. 5:05-CV-27, at *12-13 (W.D. Mich. Apr. 26, 2006).

(40)

Because the Plaintiff is a disabled Black American activist, the Defendants failed to enforce their WESSA union agreement that mandates Nakya Taylor be paid time and a half for substitute teaching hours and be accommodated with union advocacy support in resolving employment disputes, when they refused her union support and refused to pay her pursuant the WESSA agreement and federal law.

(41)

**COUNT V. DISCRIMINATION: 42 U.S.C. § 1983:** *WPSD Individual Defendants*

Plaintiffs reallege paragraphs 1-41.

(42)

The Defendants discriminated against the Plaintiff when they refused to pay her pursuant to the union agreement like they did for other similarly situated employees.

(43)

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia." 42 U.S.C. § 1983.

(44)

"To state a viable § 1983 claim, Plaintiffs must allege that: 1) they were deprived of a right, privilege, or immunity secured by the Federal Constitution or laws of the United States, and 2) the deprivation was caused by a person while acting under color of state law. *See Flagg Bros. v. Brooks,* 436 U.S. 149, 155-57, 98 S.Ct. 1729, 1732-34, 56 L.Ed.2d 185 (1978); *Brock v. McWherter,* 94 F.3d 242, 244 (6th Cir. 1996). Defendants do not argue that they are not "persons acting under the color of state law" within the meaning of § 1983. Therefore, the issue to be determined is whether the regulation at issue…defines a right enforceable under § 1983. *White v. Engler*, 188 F. Supp. 2d 730, 744 (E.D. Mich. 2001).

(45)

The Defendants deprived the Plaintiff of her rights to be free from involuntary servitude, equal protection, and due process under law to enforce her rights to contracts by collaborating and using their official roles to enforce their racial animus based discrimination evidenced by their refusal to adequately compensate the Plaintiff pursuant to the binding union agreement and dismissing her under pretextual circumstances blaming her disability symptoms, only after she sought to enforce her rights to equal pay.

(46)

## COUNT VI. UNJUST ENRICHMENT: *Defendant WPSD*

Plaintiffs reallege paragraphs 1-46.

(47)

The Defendants, as public school district, have been unjustly enriched by receiving substitute teaching services from the Plaintiff, performed in good faith, and their outright refusal to compensate her pursuant to their time and half per hour mandate.

(48)

For any state that recognizes the cause of action, the typical elements of a state-law claim for unjust enrichment are: (1) the plaintiff conferred a benefit upon the defendant; (2) the defendant accepted the benefit; and (3) injustice would occur if the defendant did not pay the plaintiff for the value of the benefit. Chapman v. Gen. Motors LLC, No. 219CV12333TGBDRG, 2021 WL 1286612 (E.D. Mich. Mar. 31, 2021). Even though no contract may exist between two parties, under the equitable doctrine of unjust enrichment, a person who has been unjustly enriched at the expense of another is required to make restitution to the other. Morris Pumps v.

<u>Centerline Piping, Inc.</u>, 273 Mich. App. 187, 729 N.W.2d 898 (2006).  The theory underlying quantum meruit recovery is that the law will imply a contract in order to prevent unjust enrichment when one party inequitably receives and retains a benefit from another. <u>Morris Pumps v. Centerline Piping, Inc.</u>, 273 Mich. App. 187, 729 N.W.2d 898 (2006).

(49)

Defendants have received the inequitable benefit of uncompensated labor despite their non-discretionary and contractual duties to adequately reimburse the Plaintiff.

(50)

**COUNT VII. VIOLATIONS OF THE FAIR LABOR STANDARDS ACT:  29 U.S.C. § 207: *WPSD Defendants***

Plaintiffs reallege paragraphs 1-50.

(51)

The Defendants violated the Fair Labor Standards Act when they constructively caused the Plaintiff to work more than forty hours within a work week without overtime pay.

(52)

Federal law states that "no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207.  "The general overtime pay standard in section 7(a) requires that overtime must be compensated at a rate not less than one and one-half times the regular rate at which the employee is actually employed. The regular rate of pay at which the employee is employed may in no event be less than the statutory minimum. (The statutory minimum is the specified minimum wage applicable under section 6 of the Act, except in the case of workers specially provided for in section 14 and workers in Puerto Rico, the Virgin Islands, and American Samoa who are covered by wage orders issued pursuant to section 8 of the Act.) If the employee's regular rate of pay is higher than the statutory minimum, his overtime compensation must be computed at a rate not less than one and one-half times such higher rate." 29 C.F.R. § 778.107.

(53)

The Defendants have established a habitual custom of coercing minority employees to work as substitute teachers without the statutorily mandated compensation and subjected this Plaintiff to said discriminatory custom, causing her to work over thirty hours as a high school substitute teacher with disability accommodations or the contracted and mandated pay rate.

(54)

**COUNT VIII. RACIALLY DISCRIMINATORY HOSTILE WORKPLACE: VIOLATIONS OF FOURTEENTH AND FIFTH AMENDMENT EQUAL PROTECTION &  DUE PROCESS, TITLE VI & VII OF THE CIVIL RIGHTS ACT OF 1964:** *WPSD Defendants*

Plaintiff realleges paragraphs 1-54.

(55)

The Defendants established a hostile work environment, violated the Plaintiff's constitutional due process and equal protection rights, and her rights as a protected class member under law, when they caused her to endure a habitual custom of racial animus in the workplace by making racist trope-based statements equating to

insults, intimidation, and intentional infliction of emotional distress, and further ignoring the Plaintiffs pleadings for disability accommodations and fair-market pay pursuant to the WESSA Union agreement.  Defendants further established a hostile work environment when they placed the Plaintiff and other Black employees under surveillance without cause or explanation.

(56)

No person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.  "It shall be an unlawful employment practice for an employer-(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status

as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

(57)

"The Equal protection clause's command that no state shall deny to any person within its jurisdiction the equal protection of the laws [U.S.C.A. Const.Amend. 14] is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985). "No person shall be …deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed." MI CONST Art. 1, § 17 (West). "Claims of violation of the Equal Protection Clause based on discrimination in the workplace are subject to the same standards as claims of discrimination under Title VII. *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988)" *Basso v. State of Michigan Department of Corrections*, File No. 2:08-cv-75, at *11 (W.D. Mich. Apr. 2, 2009). "Substantive due process protects the individual from the exercise of power without any reasonable justification." Parrino v. Sebelius, 155 F. Supp. 3d 714 (W.D. Ky. 2015), aff'd sub nom. Parrino v. Price, 869 F.3d 392 (6th Cir. 2017). The "procedural due process" element of a due process challenge

provides that, when government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner. U.S.C.A. Const.Amend. 14. <u>People v. Haynes</u>, 256 Mich. App. 341, 664 N.W.2d 225 (2003).

(58)

"When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id*., at 67 (internal brackets and quotation marks omitted), Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  "Claims of violation of the Equal Protection Clause based on discrimination in the workplace are subject to the same standards as claims of discrimination under Title VII. *Gutzwiller v. Fenik*, 860 F.2d 1317 (6th Cir. 1988)" *Basso v. State of Michigan Department of Corrections*, File No. 2:08-cv-75, at *11 (W.D. Mich. Apr. 2, 2009). A plaintiff claiming discrimination may provide direct evidence of discrimination, or a plaintiff may establish a *prima facie* case under the burden-shifting analysis described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248 (1981). *White v. Baxter*

*Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008).  "Under this framework, the plaintiff bears the initial burden of establishing a *prima facie* case of discrimination. A *prima facie* case of employment discrimination requires a plaintiff to show that: (1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was treated differently than similarly situated individuals who are not members of his protected class." *See McDonnell Douglas*, 411 U.S. at 800-04. *Basso v. State of Michigan Department of Corrections*, File No. 2:08-cv-75, at *11-12 (W.D. Mich. Apr. 2, 2009).  No employer "shall discriminate." 29 U.S.C. § 206.

(59)

The Defendants violated Nakya Taylor's constitutional and civil rights to equal protection, due process, and a non-discriminatory workplace when they participated in and established a custom of workplace intimidation and coercion through false-pretense-based, fraudulent promises of the Union negotiated pay-rate, then breaking that promise, and ordering other staff to enforce the con, thereby creating to a hostile work environment for the Plaintiff.  The Plaintiff was ridiculed, harassed, and suffered recorded adverse work actions for demanding her federally prescribed and union negotiated pay-rate, while non-minority employees

were paid without having to seek assurances due to an ongoing custom of non-payment.

(60)

## COUNT IX. RETALIATORY DISCHARGE: VIOLATIONS OF FIRST AMENDMENT, TITLES VI & VII OF THE CIVIL RIGHTS ACT OF 1964, AND THE MICHIGAN ELLIOT-LARSEN CIVIL RIGHTS ACT

Plaintiff, realleges paragraphs 1-60.

(61)

The Defendant subjected the Plaintiff to a retaliatory discharge when she was dismissed from her position in response to her consistent complaints and objections in response to non-payment, hostile work-environments, disparate treatment, and her filing of a civil rights complaint against the Defendant. The Plaintiff was discharged without just cause, legal right, and or due process of law in retaliation for formally expressing her complaints about unfair treatment and failure to accommodate her disabilities.

(62)

"Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech" U.S. Const. amend. I.  "It shall be an unlawful employment practice for an employer- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.

(63)

"An employer shall not discharge, threaten, or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location, or privileges of employment because the employee, or a person acting on behalf of the employee, reports or is about to report, verbally or in writing, a violation or a suspected violation of a law or regulation or rule promulgated pursuant to law of this state, a political subdivision of this state, or the United States to a public body, unless the employee knows that the report is false, or because an employee is

requested by a public body to participate in an investigation, hearing, or inquiry held by that public body, or a court action." Mich. Comp. Laws § 15.362.

(64)

"To survive a motion to dismiss on his First Amendment retaliation claim, plaintiff must adequately plead that he: (1) engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated, at least in part, by his protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir.1999).  "In order to establish a case of retaliatory discharge, plaintiff must prove (1) that he engaged in an activity protected by Title VII; (2) that this exercise of his protected civil rights was known to defendant; (3) that defendant thereafter took an employment action adverse to the plaintiff; and (4) that there was a causal connection between the protected activity and the adverse employment action." *Wrenn v. Gould,* 808 F.2d 493 (6th Cir. 1987); *Cohen v. Fred Meyer, Inc.,* 686 F.2d 793 (9th Cir. 1982). *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).

(65)

"Plaintiff in this type of case must establish that the decision complained about as retaliatory would not have been made "but for" the protected status of the

plaintiff." *Canitia v. Yellow Freight System, Inc.*, 903 F.2d 1064, 1068 (6th Cir. 1990).  "To establish a prima facie case of employment discrimination, Plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for his job; (3) suffered an adverse employment action; and (4) was treated differently than similarly-situated, non-protected employees." *Mensah v. Caruso*, Case Number: 10-13233, at *7 (E.D. Mich. Jan. 10, 2014).

(66)

The Defendants subjected the Plaintiff to a retaliatory discharge when they dismissed Nakya Taylor from her position after she complained of non-payment and hostile work environment, and filed a civil rights complaint.  When Nakya Taylor expressed her desire for the required substitute teaching pay, she was ignored.  When the Plaintiff continued to complain of disparate treatment equating to workplace harassment and filed a civil rights complaint with the State Civil Rights authorities; she was discharged without ever having her complaints addressed or being paid for her labor.

(67)

**COUNT IX. UNLAWFUL EMPLOYMENT PRACTICES: VIOLATIONS OF THE FIRST, THIRTEENTH, AND FOURTEENTH AMENDMENT'S EQUAL PROTECTION CLAUSES, TITLES VI & VII OF THE CIVIL**

**RIGHTS ACT OF 1964, AND MICHIGAN'S ELLIOT-LARSEN CIVIL**

**RIGHTS ACT:** *Defendant WPSD*

Plaintiff, realleges paragraphs 1-67.

(68)

The Plaintiff suffered employment discrimination causing extreme mental anguish and loss of income when she was coerced into working as a substitute teacher without pay, subjected to racist tropes, and dismissed after filing a civil rights complaint.  The Plaintiff was treated disparately different from similarly situated Caucasian employees.

(69)

"No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "Nor be deprived of life, liberty, or property, without due process of law" U.S. Const. amend. V.  "It shall be an unlawful employment practice for an employer- (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,

religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2.  "It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3.  No employer "shall discriminate" 29 U.S.C. § 206.

(70)

"An employer shall not do any of the following: (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to

employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status. (b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202.  "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d.

(71)

"When the workplace is permeated with "discriminatory intimidation, ridicule, and insult," 477 U.S., at 65, that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *id*., at 67 (internal brackets and quotation marks omitted), Title VII is violated." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).  "To establish a prima facie case of employment discrimination, Plaintiff must show that he: (1) was a member of a protected class; (2) was qualified for his job; (3) suffered an

adverse employment action; and (4) was treated differently than similarly-situated, non-protected employees." *Mensah v. Caruso*, Case Number: 10-13233, at *7 (E.D. Mich. Jan. 10, 2014).

(72)

The Plaintiff asserts that she was insulted, and subjected to a hostile workplace permeated with discrimination because she is a Black-American and expressed support for protests related to her niece Breonna Taylor.   The Plaintiff was subjected to workplace intimidation causing extreme mental anguish and loss of enjoyment of life when she and other Black Americans were singled-out and denied the benefits of workplace policies in contrast to, and disparately different from the treatment of similarly situated unprotected employees.

(73)

**COUNT X: GROSS NEGLIGENCE: CUSTOM OF RACIAL ANIMUS HABITUAL VIOLATIONS OF TITLE VI OF THE CIVIL RIGHTS ACT OF 1964, AND MICHIGAN'S ELLIOT-LARSEN CIVIL RIGHTS ACT**

Plaintiff, realleges paragraphs 1-73.

(74)

The Defendants committed gross negligence when they established a habitual practice of violating their own WESSA Agreement, the Fair Labor Standards Act, and Michigan's Elliot-Larsen Civil Rights Act. The Defendant established a custom of racial animus by habitually failing to pay minority employees for substituting for absent certified teachers. The Defendants further established a custom of racial animus by supporting and condoning egregious disparate treatment by failing to address years of employee discrimination complaints. The Defendants also established a customary practice of failing to properly report and respond to the Plaintiff's workplace injuries of mental and emotional distress brought on by their hostile workplace, ultimately discharged the Plaintiff for making consistent complaints, and created pre-contextual reasons for her dismissal.

(75)

"An employer shall not do any of the following: (a) Fail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.(b) Limit, segregate, or classify an employee or applicant for employment in a way that deprives or tends to deprive the employee or applicant of an employment opportunity, or otherwise adversely affects the status of an employee

44

or applicant because of religion, race, color, national origin, age, sex, height, weight, or marital status." Mich. Comp. Laws § 37.2202.

(76)

To establish a prima facie case of negligence under Michigan law, a plaintiff must allege and prove four elements: (1) a legal duty owed by the defendant to the plaintiff; (2) a breach of that duty; (3) causation; and (4) damages. *Case v. Consumers Power Co.*, 463 Mich. 1, 6 (2000). *Stewart v. Mich. Pontiac, LLC*, No. 16-10434, at *9 (E.D. Mich. Feb. 16, 2017). "Under Michigan law, "gross negligence" means "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." Mich. Comp. Laws § 600.2945(d). " *Peak v. Kubota Tractor Corp.*, 924 F. Supp. 2d 822, 833 (E.D. Mich. 2013).

(77)

The Defendant acted in gross negligence when it knowingly, willfully, and purposefully refused to pay the Plaintiff pursuant to the same contract as similarly situated Caucasian employees. The Defendants refused mediate the Plaintiffs complaints of the workplace grievances pursuant to the WESSA Union agreement, or to otherwise perform there legal duty of care, i.e, to provide the equal protection and due process under their employee policies, state statutes, and federal laws

owed to the Plaintiff, when they habitually ignored her disability and racial discrimination complaints and continued to subject her to disparate treatment and hostile workplace abuse.  The Defendants acted with wanton disregard and malice for the Plaintiff's rights when they consistently and habitually ridiculed, assaulted, and insulted the Plaintiff in the workplace while ignoring their own policies and various employment statutes, thereby substantiating negligent infliction of emotional trauma on Mrs. Isis Smith.

(78)

The Defendant's knowingly, purposefully, and with wanton disregard for the Plaintiff's protected rights, breached their duty of care owed to Mrs. Isis Smith when they denied her access to proper internal grievance procedures, federal OSHA regulations, and equal protection under the law, causing the Plaintiff to suffer severe emotional distress, anxiety   attacks, loss of sleep, headaches, depression, and mental anguish.

(79)

**COUNT XI: DEFAMATION:** *Defendants Joshua Bauchbaum and Sarah Earnest*

The Defendants subjected the Plaintiff to defamation when they published oral and written content spreading the false rumor that the Plaintiff was lazy, unreliable, and

not a team player when she was actually suffering from lack of accommodations for her disabilities.

(80)

"In Michigan, a prima facie case of defamation consists of four elements: (1) a false and defamatory statement; (2) publication to a third party; (3) fault—at least negligence—in publishing the statement; and (4) 'either actionability of the statement irrespective of special harm (defamation per se) or ... special harm caused by publication (defamation per quod).'" *Ogle v. Hocker*, 430 F. App'x 373, 374 (6th Cir. 2011) (quoting *Colista v. Thomas*, 616 N.W.2d 249, 254 (Mich. Ct. App. 2000)). *Werme v. Mortg. Ctr., LLC*, No. 1:15-cv-130, at *3-4 (W.D. Mich. Mar. 6, 2017).

(81)

The Defendants injured the Plaintiffs reputation and caused her severe mental anguish when they told staff members and district employees that she was not a team player, unreliable, and or lazy, and wrote on payroll paperwork not to pay the Plaintiff for her labor, further corroborating the orally published defamatory statements.

(82)

**COUNT XII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS:**

***WPSD and Individual Defendants***

Plaintiff realleges paragraphs 1-82.

(83)

The Defendants subjected the Plaintiff to intentional infliction of emotional distress when they followed her around at work seeking to create pretextual excuses for her termination, suggested to staff members that she would be dismissed soon without discussing performance issues with her, and intentionally refused to pay her equally as an insult to the pretextual dissolution of her employment.

(84)

"To establish a claim of intentional infliction of emotional distress, a plaintiff must prove the following elements: (1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress. Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "The conduct complained of in a suit alleging intentional infliction of emotional distress must be so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Hayley v. Allstate Ins. Co., 262 Mich. App. 571, 686 N.W.2d 273 (2004).  "Sufficient proof must be adduced of intentional infliction

and something much more than simply aggravation must be shown to make out a case of intentional infliction of emotional distress under Michigan law; this requires plaintiff to show more than hurt feelings, but seeking and receiving medical treatment is not a condition precedent to satisfying the element of extreme emotional distress". <u>Gilliam v. Ordiway</u>, 147 F. Supp. 3d 664 (E.D. Mich. 2015).

(85)

The Defendant exhibited extreme and outrageous conduct when they refused to pay the Plaintiff pursuant to the union agreement, subjected her to racists tropes, while spreading rumors throughout the staff that the Plaintiff was lazy, unreliable, and for those reasons, would soon be dismissed despite no formal performance evaluation grievances being documented against the Plaintiff. To either take an organ without permission and or falsely alert an estate to such an reprehensible act without further clarification is reckless and or intentional.  The actions of the Defendant have caused the Plaintiff severe mental and emotional anguish.  As such, the Plaintiff is entitled to compensation and equitable relief to be made as whole as possible for injuries.

(86)

**DAMAGES**

"It should be kept in mind that the plaintiffs base their present action for money damages on the Federal civil rights statutes and that those statutes give a right of civil action only for deprivation of rights, privileges, and immunities secured by the Constitution and laws of the United States." See Tenney v. Brandhove, 341 U.S. 367, 71 S.Ct. 783, 95 L.Ed. 1019; Screws v. United States, 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495; *Smith v. Jennings*, 148 F. Supp. 641, 645 (W.D. Mich. 1957).  "Where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done." *Bivens,* 403 U.S. at 396, 91 S.Ct. 1999, quoting *Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 90 L.Ed. 939 (1946). *Airtrans, Inc. v. Mead*, 389 F.3d 594, 598 n.3 (6th Cir. 2004).  Plaintiff also seeks damages pursuant to the Equal Pay Act of 1963,  29 U.S.C. § 216.

(87)

## RELIEF REQUESTED

Plaintiff, realleges paragraphs 1-87.

(88)

As a result of the constitutional and federal law violations suffered by the Plaintiff and caused by the Defendant, Mrs. Nakya Taylor has suffered loss of income and

wages, mental anguish, humiliation, outrage, anxiety attacks, depression, headaches, fatigue, and emotional distress.

(89)

**Wherefore**, the Plaintiff respectfully requests that this Honorable Court enter a Judgment in her favor against Defendants for the following relief:

I. That $250,000.00 be paid in compensatory and hedonic damages to the Plaintiff to compensate her for the mental and physical anguish, loss of enjoyment, and depression she has and will continue to endure; any back pay determined by the court to be owed to the Plaintiff under the Equal Pay Act of 1963;

II. That $250,000.00 be paid in exemplary damages to the Plaintiff for the Defendants' violations of public trust and offensive affronts to the conscience of the community;

III. That $50,000.00 be paid as an award of interest, costs, and reasonable attorney fees;

IV. Any other compensatory, exemplary, or equitable relief that this Honorable Court deems appropriate at the commencement of trial.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for Plaintiff, Mrs. Nakya Taylor

Dated: November 7th, 2023

By: /s/ John R. Beason III, Esq.
The J.R. Beason Firm PLLC.
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

_____

NAKYA TAYLOR,

     Plaintiff,                                       Case No.

v.                                             Hon. Chief Judge Hala Jarbou

WYOMING PUBLIC
SCHOOL DISTRICT, ET AL.
     Defendants.

_____

## JURY DEMAND

To the extent that a jury trial is allowed with regard to any of the issues as set forth above, Plaintiff mercifully demands such.

**THE J.R. BEASON FIRM, PLLC.**
Attorney John R. Beason III
for Plaintiff, Mrs. Nakya Taylor

Dated: November 7th, 2023

By: /s/ John R. Beason III, Esq.
Attorney John R. Beason III
D.C. Bar No.: 1721583
IBA Bar No.: 1522438
853 McAlister St.
Benton Harbor, MI 49022
(269) 213-1426
JRBeason3@TheJRBeasonFirm.com